UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLY GRANT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| UNITED STATES OF AMERICA, | ) No. 1:13-cv-00983-SEB-DKL ) ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This cause is before the Court on Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Docket No. 18], filed on January 3, 2014 pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. For the reasons set forth below, the motion is GRANTED.

## Factual Background

Plaintiff Kimberly Grant is a resident of Indiana. This suit arises out of her dealings with Defendant United States Department of Housing and Urban Development (HUD), from whom she contracted to purchase a house in Indianapolis.

On May 8, 2012, Plaintiff signed a contract to buy a house owned by HUD at 9734 East 10th Street, Indianapolis. The purchase price was $60,100, and Plaintiff paid $1,000 in earnest money on signing the contract. Pl.'s Ex. C; Def.'s Ex. 1.The parties also executed a "lead-based paint addendum," reciting that Plaintiff was allowed 15 days from the date that HUD accepted the purchase contract to withdraw from the contract and recover her earnest money, if an

1

accredited inspection detected the presence of lead paint in the house. Def.'s Ex. 2.[1] Because the property was being sold subject to FHA insured financing, the parties agreed that it would fall to HUD to procure a lead-based paint inspection and make Plaintiff aware of the results. *Id.* at 1–2. HomeTelos, LP ("HomeTelos"), HUD's "asset manager" with responsibility for the marketing and disposition of its properties, accepted this contract a week later, on May 15, 2012. Bonelli Decl. § 15.[2]

On that same date, HomeTelos referred the contract to its closing agent, Hocker & Associates ("Hocker"), to perform a title search before closing. *Id.* at ¶ 16. On May 23, 2012, Hocker reported to HomeTelos that a title search had revealed the existence of a mortgage not reflected in the deed. *Id.* at ¶ 17; Simms Decl. ¶¶ 8–10. Apparently because of the unresolved title issue, the parties agreed to three extensions of the closing date, with the final extension setting the date at August 13, 2012. Bonelli Decl. at ¶¶ 19–21. According to Defendant, the title issue was resolved on or around August 8, 2012. *Id.* at ¶ 22.

HUD had contracted with Asset Management Specialists ("AMS") to be the agency's "field service managers" for the 10th Street house and others—an agreement that gave AMS responsibility for the physical preservation and protection of HUD-owned properties. *See Id.* at ¶¶ 23–24. HUD also contracted with the firm, Chinye-EBS Evaluation JV ("Chinye"), to perform the lead-based paint inspection required by the addendum to the home purchase contract. On May 16, 2012, AMS ordered the lead-based paint inspection of the 10th Street house, and Chinye performed it on May 22. *Id.* at ¶¶ 31–32. The inspection revealed that lead-based paint was present in the house, and HomeTelos subsequently requested a "lead-based paint

---

[1] The parties signed three further extensions to the contract, attached to Defendant's motion to dismiss as Exhibits 3, 4, and 5. *See* Docket No. 19.
[2] The "asset manager" contract between HUD and HomeTelos, which describes the nature of HomeTelos's responsibilities, is attached to the motion to dismiss as Exhibit 9 (styled "Exhibit A to Bonelli Declaration").

stabilization plan" from AMS, as required by the home purchase contract. *See id.* at ¶ 33; Def.'s Ex. 2. ("Upon contract execution HUD will procure a lead-based paint inspection . . . along with a paint stabilization plan and cost estimate if deteriorated lead-based paint is found . . . ."). The lead issue prompted Plaintiff's broker to request an additional extension of the closing date, which HomeTelos accepted, resetting the closing to August 28, 2012. *Id.* at ¶ 34. On August 24, 2012, an AMS subcontractor performed the "lead-based paint stabilization," and Chinye conducted a follow-up inspection thereafter. *Id.* at ¶ 35. Later, Plaintiff's broker requested an extension of the closing date to September 12, 2012; according to Defendant, HomeTelos received the final lead clearance report on August 29 and thus stood ready to close as of that date. *Id.* at ¶¶ 36–37.

However, Plaintiff ultimately did not go through with the purchase. On September 13, 2012, she signed a release form stating as follows: "Purchaser and seller do not intend to consummate the contract described above, and hereby agree to mutually release each other from any and all obligations, liabilities, and claims arising from the execution of the contract." Def.'s Ex. 6 ("Contract Release and Earnest Money Disposition Request Form"). According to Plaintiff, she was forced to withdraw from the sale because the delays occasioned by the title and lead paint issues had caused her to lose her loan approval. Compl. ¶ 7.[3] HomeTelos accepted Plaintiff's release, and it returned Plaintiff's $1000 earnest deposit to her. Def.'s Ex. 6.

Plaintiff filed a Notice of Federal Tort Claim with HUD on October 11, 2012; in it, she disclosed her intent to sue on the basis that her "previously approved loan was denied," causing her to "lose [the] sale of [the] home and suffer mental anguish." Pl.'s Ex. 1. On April 3, 2013,

---

[3] According to the declaration of HUD Branch Chief Debra Bonelli McMahan, Plaintiff's lender "stated that its decision was based on the following reasons: 'Property does not qualify, value and type of collateral not sufficient-inspection or repairs required' and 'Income-high ratios-excessive obligations in relation to income.'" Bonelli Decl. ¶ 40. It is not clear from where McMahan draws this quote.

HUD responded, denying her claim for $110,100.00 and advising her of her right to file a civil suit within six months. Pl.'s Ex. 2. She filed this timely complaint on June 19, 2013.

## Legal Analysis

### Standard of Review

Defendant moves to dismiss Plaintiff's two counts for failure to state a claim or lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12. In the alternative, it seeks summary judgment as to each claim pursuant to Federal Rule of Civil Procedure 56(a).

Because Plaintiff filed her complaint without the assistance of counsel, we construe its contents with still greater liberality than that normally afforded to plaintiffs. *See Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001) (citing *Hudson v. McHugh,* 148 F.3d 859, 864 (7th Cir. 1998)).

**1. Standard under Rule 12(b)(1)**

The Federal Rules of Civil Procedure command that courts dismiss any suit over which they lack subject matter jurisdiction—whether acting on the motion of a party or *sua sponte. See* Fed. R. Civ. Pro. 12(b)(1). In ruling on a motion to dismiss under Rule 12(b)(1), we "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771 (7th Cir. 2002); *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). We may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011).

## 2. Standard under Rule 12(b)(6)

The Federal Rules of Civil Procedure authorize dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.,* 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at

555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

**3. Standard under Rule 56(a)**

Summary judgment is appropriate on a claim if the moving party can show that there is no genuine dispute as to any material fact, leaving them entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such

that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in Plaintiff's favor, if genuine doubts remain and a reasonable fact-finder could find for Plaintiff, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). But if it is clear that Plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## Discussion

Plaintiff claims that HUD is responsible for her loss of financing and consequent withdrawal from the home purchase contract before the sale closed; her complaint seeks recovery on two legal theories: negligence and breach of contract. *See* Compl. ¶¶ 6, 9. Defendant argues that both counts should be dismissed on the pleadings, urging that the negligence claim is barred by the "economic loss" doctrine and that we lack subject-matter jurisdiction over the
7

contract claim. In the alternative, Defendant also presents arguments for a grant of summary judgment on both claims. We need not reach the arguments for summary judgment because we conclude that the dismissal of both counts is warranted.

## I. Count One -- Negligence

A negligence claim brought against an agency of the United States is governed by the Federal Tort Claims Act (FTCA), which provides that the substantive legal standard governing such tort claims shall be "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Gil v. Reed,* 381 F.3d 649, 658 (7th Cir. 2004). In order to prevail on her negligence claim, Plaintiff must therefore satisfy the criteria set forth by Indiana law. In Indiana, the "tort of negligence is comprised of three elements: (1) a duty on the part of defendant in relation to the plaintiff, (2) failure on the part of defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Norman v. Turkey Run Cmty. Sch. Corp.,* 411 N.E.2d 614, 616 (Ind. 1980) (citing *Neal v. Home Builders Inc.,* 111 N.E.2d 280, 284 (Ind. 1953)). Defendant argues that Plaintiff cannot fulfill the third requirement—the existence of damages—because Indiana's "economic loss" rule bars recovery in tort for the type of loss she allegedly suffered. We agree.

Indiana's "economic loss" rule provides that a defendant cannot be held liable in tort for any purely economic loss caused by its negligence—"that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself)." *Indianapolis-Marion Cnty. Public Library v. Charlier Clark & Linard, P.C.* ("IMCPL"), 929 N.E.2d 722, 726–727 (Ind. 2010). Exceptions to this general rule do exist, and they may allow recovery where there has been intentional misconduct, "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary . . . and negligent misstatement." *Id.* at 736.

Here, Plaintiff claims that "HUD was negligent in conducting a title search which delayed the closing . . . and HUD was also negligent in their failure to complete lead base[d] inspection test in enough time to close the sale in a reasonably timely manner." Compl. ¶ 7. The injury that Plaintiff allegedly suffered was the loss of her loan pre-approval and, consequently, her opportunity to close the sale of the house and take possession of it. *Id.* at ¶ 8. This type of loss is a classic instance of "frustrated expectations"—the loss a prospective buyer feels when she is denied the benefit of the bargain she had made. *See Choung v. Iemma,* 708 N.E.2d 7, 13–14 (Ind. Ct. App. 1999). The damages are purely pecuniary, and as such fall within the general ambit of the "economic loss" rule: "A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally respects." *Jordan v. Talaga*, 532 N.E.2d 1174, 1181 (Ind. Ct. App. 1989); *see also* W. Prosser, *Handbook on the Law of Torts*, § 92 at 613 (4th ed. 1971).

Further, none of the rule's limited, recognized exceptions apply here. First, the two parties were undeniably in privity with one another, ruling out the applicability of exceptions to the rule prompted by concern that a tortfeasor could entirely escape liability for economic losses by slipping through the gap between tort and contractual liability. *Cf. KB Home Ind. Inc. v. Rockville TBD Corp.,* 928 N.E.2d 297, 304–305 (Ind. Ct. App. 2010); *IMCPL,* 929 N.E.2d at 735–736 ("We recognize that there are situations where it would be unjust not to allow plaintiffs to proceed in tort against an engineer or design professional for purely economic loss where no contract exists between the parties."). Second, Plaintiff does not accuse HUD in her complaint of any misrepresentation—whether intentional or negligent. *Cf. Greg Allen Constr. Co. v. Estelle,* 798 N.E.2d 171, 174 (Ind. 2003) (recognizing that "negligent misrepresentation may be actionable and inflict only economic loss"). While she alleges that HUD "failed in a timely manner to perform all inspections and necessary procedures," she never claims that HUD

deceived her in carrying out the title search and lead-based paint inspections (or, more accurately, in contracting with other firms to perform those functions). *Cf. U.S. Bank,* 929 N.E.2d at 750 (recognizing the possibility of tort liability for an economic loss where a title search company negligently failed to discover the existence of a lien on the real estate plaintiff had contracted to purchase). Rather, Plaintiff charges only that HUD's conduct of its contractual duties caused delay—delay that in turn undermined her ability to secure financing and enjoy the benefits of her house purchase.[4]

In response to this motion to dismiss, Plaintiff points to the fact that the complaint alleges "mental anguish" damages as well as economic loss. *See* Pl.'s Resp. 3; Compl. ¶ 8.[5] In recognizing the possibility of recovery for "mental anguish" damages, Indiana long adhered to the "impact rule," which provided that such damages were available only where they followed naturally and directly from an accompanying physical injury. *See Dahlin v. Amoco Oil Corp.*, 567 N.E.2d 806, 812 (Ind. Ct. App. 1991). An exception to this general rule has since been recognized, applying to intentional conduct "where the tort involves the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance." *See Mullen v. Cogdell,* 643 N.E.2d 390, 402–403 (Ind. Ct. App. 1994) (citing *Arlington State Bank v. Colvin,* 545 N.E.2d 572, 576 (Ind. Ct. App. 1989). Here, as we have already noted, Plaintiff has not plausibly alleged that HUD intentionally inflicted emotional distress upon her, perpetrated a fraud, or committed any other form of "outrageous" intentional wrongdoing that would trigger an

---

[4] In her response brief, Plaintiff does assert that HUD "issu[ed] an incorrect title commitment on which the lender relied to its detriment." Pl.'s Resp. 3. Such an assertion, however, is unsupported by any of the facts; the contract does not contain such a "title commitment," and in fact allows the seller to rescind the contract before closing if "[s]eller is unable or unwilling to remove valid objections to the title." Def.'s Ex. 1 at 2. Plaintiff also claims in her response brief, for the first time, that HUD's conduct "intentionally caused plaintiff not to get or los[e] the chance to purchase the property." Pl.'s Resp. 3. No such allegation occurs in the complaint, nor would the theory that HUD intentionally caused Plaintiff harm be a plausible one, even if it were set forth in the complaint.
[5] In her response, Plaintiff uses the term "mental distress" damages. *See* Pl.'s Resp. 3.

10

exception to the impact rule. *Cf. Conwell v. Beatty,* 667 N.E.2d 768, 776–777 (Ind. Ct. App. 1996) (recognizing that mental anguish damages may be recovered for the independent tort of "intentional infliction of emotional distress" without the presence of a "host tort"); *Munsell v. Hambright,* 776 N.E.2d 1272, 1281 (Ind. Ct. App. 2002) (recognizing the possibility of recovering mental anguish damages for fraud unaccompanied by physical harm). Her claim to have suffered mental anguish damages from this transaction is thus not cognizable under Indiana law.

In brief, this is not one of the "special circumstances" where "overriding public policies have carved out exceptions for tort liability," *see U.S. Bank,* 929 N.E.2d at 748, and therefore Plaintiff's recovery, if any is available, lies in contract.

## II. Count Two – Breach of Contract

Suits against the United States for breach of contract are permitted through the limited waiver of sovereign immunity created by the Tucker Act, 28 U.S.C. § 1491. Jurisdiction over contract suits, however, is determined by the size of a plaintiff's monetary claim. Exclusive jurisdiction over suits claiming damages in excess of $10,000 lies with the Court of Federal Claims, *see Bowen v. Massachusetts,* 487 U.S. 879, 910 n.48 (1988),[6] while the Court of Federal Claims and the U.S. District Courts have concurrent jurisdiction over claims not exceeding $10,000. *See* 28 U.S.C. § 1436(a)(2) (known as the "Little Tucker Act").

Plaintiff's complaint here does not specify an amount of damages, though her initial claim to HUD sought $110,100. Pl.'s Ex. 2. As the Seventh Circuit has stated, a plaintiff bears

---

[6] As the Supreme Court explained in *Bowen,* the practical exclusive jurisdiction over large-amount contract suits enjoyed by the Federal Claims Court results not from any statement by Congress making their jurisdiction *explicitly* exclusive, but rather from the fact that Congress has not waived sovereign immunity in favor of any other court's jurisdiction. 487 U.S. at 910 n.48. The exception to this "exclusivity" the Court explains in *Bowen*, according to which a district court might review a claims court decision under the Administrative Procedure Act, is not relevant here.

11

the responsibility to submit pleadings establishing the district court's subject matter jurisdiction—which she can fulfill either by stating a claim for $10,000 or less in damages, or by waiving the recovery of any damages exceeding $10,000. *See McClendon v. Blount,* 452 F.2d 381, 383 (7th Cir. 1971). Plaintiff has not done so, and thus we cannot allow her contract claim to proceed in this court.

## **Conclusion**

Because the damages Plaintiff claims to have suffered are not recoverable under Indiana tort law, we GRANT Defendant's motion to dismiss her Count One for negligence, and we do so WITH PREJUDICE. As to Count Two, we construe Defendant's motion as seeking dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and we GRANT the motion.

Because we have not reached the merits of Plaintiff's contract claim, we dismiss Count Two WITHOUT PREJUDICE and will not yet enter a final judgment pursuant to Federal Rules of Civil Procedure 58. *See generally Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1022 (7th Cir. 2013). Plaintiff is urged to seek the assistance of counsel in formulating an acceptable amended complaint should she choose to pursue further action.[7] Plaintiff may file an amended complaint within 28 days of the issuance of this order; if she does not, we will enter a final judgment in favor of Defendant and close the matter.

    IT IS SO ORDERED.

Date: _____9/3/2014_____      _____*Sarah Evans Barker*_____

                                                              SARAH EVANS BARKER, JUDGE
                                                               United States District Court
                                                                Southern District of Indiana

---

[7] Plaintiff is urged to seek the assistance of counsel as soon as possible if she elects to file an amended complaint. If she is unable to secure counsel through her own efforts, she may be able to seek assistance in doing so with the Clerk of Court of the Southern District of Indiana (main phone number 317-229-3700) or through the Indiana Bar Association (phone number 317-269-2000).

Distribution:

KIMBERLY GRANT
3946 Ridgeview Drive
Indianapolis, IN 46226

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathan.bont@usdoj.gov